IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
DEL RIO DIVISION

| | | |
|---|---|---|
| CRISTOBAL VELASQUEZ,<br>Petitioner,<br><br>v.<br><br>UNITED STATES OF AMERICA,<br>Respondent. | §<br>§<br>§<br>§<br>§<br>§<br>§<br>§ | Civ. No. DR-18-CV-46<br>Crim. No. DR-11-CR-1781(3)-AM |

## ORDER

Pending before the Court is the Petitioner Cristobal Velasquez's Motion Under 28 U.S.C. § 2255 to Vacate, Set Aside, or Correct Sentence by a Person in Federal Custody. (ECF No. 1297.) The Petitioner was convicted by a jury of RICO conspiracy, VICAR conspiracy to commit murder, and VICAR murder. He now seeks to vacate his convictions or amend his sentences, arguing that his attorneys provided ineffective assistance of counsel. For the following reasons, the Petitioner has not established that he is entitled to any relief.

## I. BACKGROUND

On September 28, 2011, the Petitioner, a member of the Texas Syndicate, was indicted with three racketeering-related charges: (1) conspiracy, in violation of 18 U.S.C. §1962(d) of the Racketeer Influenced and Corrupt Organizations Act ("RICO") (Count One);[1] conspiracy to commit murder, in violation of 18 U.S.C. §1959(a)(5) of the Violent Crimes in Aid of

---

[1] Section 1962(d), in pertinent part, provides that it shall be unlawful to conspire to violate § 1962(c). Section 1962(c) states: "It shall be unlawful for any person employed by or associated with any enterprise engaged in, or the activities of which affect, interstate or foreign commerce, to conduct or participate, directly or indirectly, in the conduct of such enterprise's affairs through a pattern of racketeering activity or collection of unlawful debt." According to 18 U.S.C. § 1963: "Whoever violates any provision of section 1962 of this chapter shall be fined under this title or imprisoned not more than 20 years (or for life if the violation is based on a racketeering activity for which the maximum penalty includes life imprisonment), or both . . . ."

Racketeering Act ("VICAR") (Count Three);[2] and murder in aid of racketeering, in violation of 18 U.S.C. § 1959(a)(1) of VICAR (Count Four).[3]

Both sections 1962 and 1959 require racketeering activity, which, in pertinent, is defined as: "(A) any act or threat involving *murder*, kidnapping, gambling, arson, robbery, bribery, extortion, dealing in obscene matter, or dealing in a controlled substance or listed chemical (as defined in section 102 of the Controlled Substances Act), *which is chargeable under State law and punishable by imprisonment for more than one year*." 18 U.S.C. § 1961(1) (emphasis added). The Petitioner was charged with numerous racketeering activities, of relevance here which is the murder of Jose Guadalupe De La Garza under section 19.02 of the Texas Penal Code.

Section 19.02 states:

(b) A person commits an offense if he:

---

[2] Section 1959, in relevant part, states:

> (a) Whoever, as consideration for the receipt of, or as consideration for a promise or agreement to pay, anything of pecuniary value from an enterprise engaged in racketeering activity, or for the purpose of gaining entrance to or maintaining or increasing position in an enterprise engaged in racketeering activity, murders, kidnaps, maims, assaults with a dangerous weapon, commits assault resulting in serious bodily injury upon, or threatens to commit a crime of violence against any individual in violation of the laws of any State or the United States, or attempts or conspires so to do, shall be punished—
>
> (1) for murder, by death or life imprisonment, or a fine under this title, or both; and for kidnapping, by imprisonment for any term of years or for life, or a fine under this title, or both;
>
> (5) for attempting or conspiring to commit murder or kidnapping, by imprisonment for not more than ten years or a fine under this title, or both.

18 U.S.C. § 1959(a)(1) and (5).

[3] The Petitioner, along with fourteen co-defendants, was charged in three counts of a seven-count indictment.

2

> (1) intentionally or knowingly causes the death of an individual;
>
> (2) intends to cause serious bodily injury and commits an act clearly dangerous to human life that causes the death of an individual; or
>
> (3) commits or attempts to commit a felony, other than manslaughter, and in the course of and in furtherance of the commission or attempt, or in immediate flight from the commission or attempt, he commits or attempts to commit an act clearly dangerous to human life that causes the death of an individual.

Tex. Pen. Code § 19.02(b). Unless the crime is committed under the influence of sudden passion arising from an adequate cause, any conviction under section 19.02 is considered a felony of the first degree. § 19.02(c)-(d).[4]

On July 1, 2013, after a jury trial, the jury convicted the Petitioner of all three counts. On December 9, 2015, the Court sentenced the Petitioner to life in prison on the RICO conspiracy count and the VICAR murder count, to be served concurrently, and a term of imprisonment of 120 months for VICAR conspiracy to commit murder, also to be served concurrently. The Petitioner directly appealed, and on January 30, 2018, the Fifth Circuit Court of Appeals affirmed the convictions and sentences.

The Petitioner then filed the present § 2255 motion on July 12, 2018, raising a two-part claim of ineffective assistance of counsel. First, he argues: "Both trial and appellate counsel [were] ineffective for failing to raise the fact that the Texas murder statute is broader than "generic murder" under 18 U.S.C. § 1959, and therefore under the categorical approach, it cannot be used to support a VICAR conviction." (Mem., ECF No. 1298 at 2.) Second, he argues that

---

[4] Relatedly, for Count One, the Petitioner was also charged with violating the following additional sections of the Texas Penal Code: § 15.01 (criminal attempt), § 15.02 (criminal conspiracy), § 15.03 (criminal solicitation), § 7.01 (parties to offense), and § 7.02 (criminal responsibility for conduct of another). For Count Three and Count

3

he was previously charged with murder for the death of Jose Guadalupe De La Garza in a Texas court but convicted only of aggravated assault. He therefore claims that his convictions cannot be based on Texas murder.

## II. SECTION 2255 STANDARD

Under § 2255, a petitioner may move to vacate, set aside, or correct his sentence or conviction "for transgressions of constitutional rights and for a narrow range of injuries that could not have been raised on direct appeal and would, if condoned, result in a complete miscarriage of justice." *United States v. Vaughn*, 955 F.2d 367, 368 (5th Cir. 1992). A petitioner is entitled to relief if he can establish that: (1) the sentencing court imposed his sentence in violation of the Constitution or the laws of the United States; (2) the court lacked jurisdiction to impose the sentence; (3) the sentence imposed exceeded the maximum authorized by law; or (4) the sentence is otherwise subject to collateral attack. *United States v. Placente*, 81 F.3d 555, 558 (5th Cir. 1996); § 2255(a)-(b).

A defendant may not bypass a direct appeal and raise an issue for the first time in a § 2255 motion without showing both cause for his procedural default and actual prejudice resulting from the error. *United States v. Guerra*, 94 F.3d 989, 993 (5th Cir. 1996). The "cause" standard requires one "to show that 'some objective factor external to the defense' prevented him from raising on direct appeal the claim he now advances." *Id.* (quoting *Romero v. Collins*, 961 F.2d 1181, 1183 (5th Cir. 1992)). "Objective factors that constitute cause include interference by officials that makes compliance with the procedural rule impracticable, a showing that the factual or legal basis for the claim was not reasonably available to counsel at the prior occasion, and ineffective assistance of counsel in the constitutional sense." *Id.* "Nonconstitutional

---

Four, he was charged with violating § 15.02, in addition to § 19.02.

4

claims that could have been raised on direct appeal, but were not, may not be asserted in a collateral proceeding." *Vaughn*, 955 F.2d at 368.

When bringing an ineffective assistance of counsel claim, as the Petitioner does, one must establish that counsel's performance was so deficient that he or she was not functioning as the "'counsel' guaranteed the defendant by the Sixth Amendment." *Strickland v. Washington*, 466 U.S. 668, 687 (1984). In order to do so, "[a] petitioner must show that counsel's performance was deficient, and that the deficiency prejudiced the defense." *Wiggins v. Smith*, 539 U.S. 510, 521 (2003). Counsel's representation is deficient if it "fell below an objective standard of reasonableness." *Strickland*, 466 U.S. at 688. There exists a strong presumption that the assistance provided by a defendant's counsel is reasonably professional. *Id.* at 689. To satisfy the "prejudice" prong, a petitioner must establish "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* at 694. "A reasonable probability is a probability sufficient to undermine confidence in the outcome" of the proceeding. *Id.*

### III. ANALYSIS

#### A. Prior State Conviction

First, the Petitioner contends that because he was previously convicted of aggravated assault causing serious bodily injured in a Texas court for the same crime involving the death of Jose Guadalupe De La Garza, the crime cannot constitute murder for purposes of VICAR. A prior state prosecution, however, does "not bar the [VICAR] prosecution because [VICAR's] reference to 'any act or threat . . . which is chargeable under State law . . . merely describes the type of generic conduct which will serve as a [VICAR] predicate and satisfy [VICAR's] pattern requirement.'" *United States v. Carrillo*, 229 F.3d 177, 182 (2d Cir. 2000) (quoting *United*

States v. Coonan, 938 F.2d 1553, 1564 (2d Cir. 1991). "In other words, the phrase 'chargeable under State law' does not require that the particular underlying conduct at issue could have been charged under state law, only that such conduct be chargeable as a general matter; i.e., that such conduct is criminal under state law." Id. at 183; see also Coonan, 938 F.2d at 1564-66 (finding no double jeopardy or consecutive sentencing concerns). Therefore, there is no merit to this argument.

**B.   Generic Murder**

Second, the Petitioner contends that trial counsel and appellate counsel were ineffective for failing to argue that section 19.02 of the Texas Penal Code is broader than the generic definition of murder. Again, racketeering activity includes murder that is chargeable under state law and the term of imprisonment is greater than one year. See § 1961. The Petitioner asserts that because § 1961 does not explicitly define murder, the Court must look to the generic definition of murder to determine if the Texas murder statute fits the generic definition. According to the Petitioner, the Texas murder statute is broader than the generic definition of murder, and because the indictment does not specify which section of the Texas murder statute he violated, his VICAR murder conviction is invalid. Hence, he contends that trial counsel and appellate counsel were ineffective in failing to raise the argument with the Court and on appeal.

Although the Fifth Circuit has not addressed a case directly on point, guidance can be found in cases addressing: (1) Hobbs Act extortion, see Scheidler v. Nat'l Org. for Women, Inc., 537 U.S. 393 (2003) (applying the generic definition of "extortion"); (2) a similar statute, see United States v. Nardello, 393 U.S. 286, 290 (1969) (Travel Act); (3) statutory sentencing enhancements, see Taylor v. United States, 495 U.S. 575 (1990) (addressing the meaning of "burglary" in 18 U.S.C. § 924(e); and (4) federal sentencing guidelines enhancements, see United

6

*States v. Quinonez-Saa*, 741 F. App'x 973 (5th Cir. 2018) (addressing murder under § 2L1.2 of the United States Sentencing Guidelines ("Guidelines")).

Of particular importance here is *Taylor*, where the Supreme Court addressed whether a prior state burglary conviction qualified as a violent felony that could be used to enhance a sentence under § 924(e). The Court held that when a specifically enumerated offense, such as burglary (or murder), is not explicitly defined by statute, a court must look to the generic, contemporary meaning of the offense to determine if the applicable state law fits the generic offense. 495 U.S. at 598. When determining if a statute of conviction is broader than the generic definition of the "same" offense, a court must employ a categorical approach and "look only to the fact of conviction and the statutory definition of the prior offense," unless "the charging paper and jury instructions actually required the jury to find all the elements of generic burglary in order to convict the defendant." *Id.* at 602. "If the elements of the conviction are narrower than or coterminous with the generic meaning," the enhancement is valid. *United States v. Hernandez-Montes*, 831 F.3d 284, 289 (5th Cir. 2016) (discussing a crime of violence enhancement under the Guidelines).[5]

However, even "[w]hen the elements of the conviction are facially broader than the

---

[5] Although not ultimately of importance here, the Petitioner contends that the Texas murder statute is a divisible statute, rather than an indivisible statute. "An indivisible statute sets out a single set of elements to define a single crime, while a divisible statute lists elements in the alternative and thereby defines multiple crimes." *Green v. United States*, Civ. No. 1:16-CV-229, 2019 WL 4316092, at *2 (E.D. Tex. Aug. 15, 2019) (citing *Mathis v. United States*, 136 S. Ct. 2243, 2249 (2016)). The consensus of the courts who have addressed the issue, however, is that the Texas murder statute is indivisible, thus requiring a strict categorical approach, rather than a modified categorical approach permitted by divisible statutes, in determining if a statute is broader than the generic definition of a crime. *See, e.g., id*; *Palacios-Mendez v. United States*, No. 3:16-CV-1774-D(BH), 2018 WL 3950419 (N.D. Tex. June 18, 2018); *Vickers v. United States*, No. 3:15-CV-3912-B-BH, 2018 WL 4627131 (N.D. Tex. May 7, 2018); *Ex parte Rodgers*, 541 S.W. 824 (Tex. Crim. App. 2017); *Young v. Texas*, 341 S.W.3d 417 (Tex. Crim. App. 2011). Because the divisibility of the statute is not ultimately determinative of the Petitioner's arguments, the Court will presume for the purposes of this Order that the statute is indivisible, a more favorable approach for the Petitioner. *See Deschamps v. United States*, 133 S. Ct. 2276, 2285 (2013) (comparing the strict categorical approach with the modified categorical approach).

generic meaning, the defendant still must show a 'realistic probability'—rather than a 'mere theoretical possibility'—that his 'statute of conviction would in fact punish conduct outside of the offense's ordinary meaning.'" *Id.* (quoting *United States v. Garcia-Figueroa*, 753 F.3d 179, 187 (5th Cir. 2014)). "To establish a 'realistic probability,' the defendant 'must at least point to his own case or other cases in which the state courts in fact did apply the statute to conduct not encompassed by the generic meaning." *Id.* (quoting *Garcia-Figueroa*, 753 F.3d at 187).

Applying the principles of *Taylor* to the present facts, the Petitioner is not entitled to any relief. In *Quinonez-Saa*, the Fifth Circuit addressed a nearly identical argument to that of the Petitioner's—that "Texas's definition of murder is plainly too broad to be 'murder' as enumerated" under § 2L1.2 comment note 1(B)(iii) of the Guidelines. 741 F. App'x at 975.[6] The Fifth Circuit, addressing § 19.02(a)(3), the "felony murder" portion of the statute, determined that neither the Supreme Court nor the Fifth Circuit had addressed if Texas murder or felony murder meets the generic offense of murder. The Fifth Circuit then noted it must look "'to various sources—such as the Model Penal Code, the LaFave and Scott treatises, modern state codes, and dictionary definitions—to define each crime by its generic, contemporary meaning.'" *Id.* (quoting *Hernandez-Montes*, 831 F.3d at 288).

Citing the Model Penal Code, the court pointed out that it "defines murder as including homicides 'committed recklessly under circumstances manifesting extreme indifference to the value of human life,' and it presumes such recklessness and indifference if the homicide occurs during the commission, attempted commission, or flight from committing various enumerated

---

[6] The version of the Guidelines at the time imposed a sixteen-point offense level increase for illegal reentry that occurred after deportation for a felony conviction for a crime of violence that received criminal history points. § 2L1.2(b)(1)(A). One of the explicitly enumerated crimes of violence was murder. § 2L1.2 cmt. n.1(B)(iii). The

8

felonies." *Id.* at 976 (quoting Model Penal Code § 210.2(1)(b)). The court also cited 2 Wayne R. Lafave, *Substantive Criminal Law* § 14.5(b)(3d ed. 2017) (discussing approaches to defining murder) and Black's Law Dictionary's definition of the felony-murder rule ("defining the rule as 'if a person dies during the course of and in furtherance of a specified type of felony—even in immediate flight from the scene . . . the death is considered a murder regardless of intent' and explaining that '[m]ost states restrict this rule to inherently dangerous felonies such as rape, arson, robbery, and burglary'"). *Id.* Finally, the court cited *United States v. Marrero*, 743 F.3d 389, 401 (3d Cir. 2014), which determined that "murder is generically defined as causing the death of another person either intentionally, during the commission of a dangerous felony, or through conduct evincing reckless and depraved indifference to serious dangers posed to human life."[7]

Based on a synopsis of legal sources, the Fifth Circuit concluded that "whether Texas felony murder comports with the generic definition is 'subject to reasonable dispute.'" *Id.* (quoting *United States v. Scott*, 821 F.3d 562, 570-71 (5th Cir. 2016)). However, the Fifth Circuit found no plain error and affirmed the district court's determination that murder under § 19.02 was a crime of violence under the Guidelines.[8] In reaching a conclusion, the court held:

> We need not decide if the Texas felony murder statute is broader than generic murder. Based on the foregoing relevant sources, *see Hernandez-Montes*, 831 F.3d at 288, we cannot say it is clear or obvious that Texas's felony murder rule is broader than generic felony murder. The state's requirement of "an act clearly dangerous to human life" that causes someone's death arguably

---

Guidelines have since been amended.

[7] Notably, the Fifth Circuit did not mention 18 U.S.C. § 1111, the federal murder statute, upon which the Petitioner heavily relies for his formulation of a generic definition of murder.

[8] The defendant's claim was subject to plain error analysis because counsel failed to object in the district court.

9

> limits the rule to dangerous felonies and conduct showing extreme indifference to human life, which is the common element in each of the foregoing definitions.

*Id.*

Based on *Quinonez-Saa*, the Petitioner cannot establish that had counsel argued that Texas murder is broader than generic murder, his outcome would have been any different. In § 2255 motions, it is well settled "that to obtain collateral relief a prisoner must clear a significantly higher hurdle than would exist on direct appeal." *United States v. Frady*, 456 U.S. 152, 166 (1982); *see also United States v. Shaid*, 937 F.2d 228, 232 (5th Cir. 1991) (quoting *Frady*, 456 U.S. at 166) ("This cause and actual prejudice standard presents 'a significantly higher hurdle' than the 'plain error' standard that we apply on direct appeal."). In other words, because *Quinonez-Saa* found no plain error under analogous circumstances, the Petitioner cannot establish prejudice for purposes of § 2255.

Moreover, the Petitioner's indictment and jury instructions adequately addressed any potential concerns arising under *Taylor*. An indictment need only refer to a corresponding state crime and need not list the specific elements constituting the state crime, so long as the jury instructions require a jury to find elements that meet the generic definition of murder. *Carrillo*, 229 F.3d at 185; *United States v. Orena*, 32 F.3d 704, 714 (2d Cir. 1994); *United States v. Bagaric*, 706 F.2d 42, 62-63 (2d Cir. 1983). The Petitioner's indictment read:

> On or about December 25, 2005, in the Western District of Texas, as consideration for the receipt of, and as consideration for a promise and an agreement to pay, anything of pecuniary value from the Texas Syndicate, and for the purpose of gaining entrance to and maintaining and increasing position in the Texas Syndicate, an enterprise engaged in racketeering activity, Cristobal Velasquez, a/k/a "Little Cris," and others known and unknown, murdered Jose Guadalupe De La Garza, in violation of Texas Penal Code, Sections 19.02 and 15.02. All in violation of Title 18, United States Codes, Sections 1959(a)(1) and 2.

(Indictment, ECF No. 2 at 30-31). Therefore, the indictment adequately apprised the Petitioner of the murder racketeering charge.

The Petitioner's jury instructions, in turn, defined murder under section 19.02 of the Texas Penal Code as the following:

> A person commits murder as defined by Section 19.02 of the Texas Penal Code if that person *intentionally or knowingly causes the death of an individual.* A person acts with intent with respect to the result of his conduct when it is his conscious objective or desire to cause the results achieved. A person acts with knowledge if he is aware that his conduct is reasonably certain to cause the result achieved. A person may be guilty of murder if the offense is committed by his own conduct, by the conduct of another for which he is criminally responsible, or by both. Under Sections 7.01 and 7.02 of the Texas Penal Code, a person is criminally responsible for an offense committed by the conduct of another if, acting with intent to promote or assist the commission of the offense, he solicits, encourages, directs, aids, or attempts to aid the other person to commit the offense.

(ECF No. 762 at 10.) In other words, the jury instructions required the jury to find that the Petitioner violated § 19.02(b)(1) of the Texas Penal Code, which indisputably meets the generic and contemporary definition of murder. *See United States v. Hinojosa*, 463 F. App'x 432 (5th Cir. 2012) (affirming RICO conspiracy based on murder under Texas Penal Code §§ 19.02 and 7.01, for intentionally and knowingly causing the death of an individual, and VICAR murder for violating Texas Penal Code §§ 19.02 and 7.01, for intentionally and knowingly causing the death of an individual). Therefore, the Petitioner's indictment and jury instructions raise none of the potential concerns arising in *Taylor* or *Quinonez-Saa*.

Finally, the Petitioner cannot show a realistic probability that the murder of Jose Guadalupe De La Garza involved conduct falling outside of the offense's ordinary meaning. In *United States v. Velasquez*, 881 F.3d 314, 333–34 (5th Cir.), *cert. denied sub nom. Cassiano v.*

*United States*, 139 S. Ct. 138 (2018), the Fifth Circuit upheld the sufficiency of the evidence of Velasquez's conviction for murder and conspiracy to commit the murder of De La Garza, based on the following evidence presented at trial:

> Inez, Torres, Esparza, and Ervey all stated that Velasquez was a Texas Syndicate member. Torres and Esparza specifically testified that Velasquez was a Texas Syndicate member at the time of the De La Garza murder. Evidence presented at trial further stated that Velasquez and other Texas Syndicate prospects and members planned the murder of De La Garza on behalf of the Texas Syndicate. Ervey, Torres, and Inez testified that Velasquez was beating De La Garza right before his cousin shot and killed De La Garza. A reasonable inference can also be made from the evidence that because Velasquez was shot in the leg during the incident, he was in close proximity to De La Garza when De La Garza was fatally shot.

The Fifth Circuit therefore found sufficient evidence that the Petitioner violated the provisions of § 19.02(b)(1). He cannot now successfully claim that his conduct falls outside the definition of generic murder.

## IV. CERTIFICATE OF APPEALABILITY

A petitioner may not appeal a final order in a § 2255 proceeding unless a judge or a circuit justice first issues a certificate of appealability. 28 U.S.C. § 2253(c)(1). "The district court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant." Rule 11 of the Rules Governing Section 2255 Proceedings. To obtain a certificate of appealability for claims denied on the merits, the petitioner must make a substantial showing of the denial of a constitutional right. *See* 28 U.S.C. § 2253(c)(2); *Slack v. McDaniel*, 529 U.S. 473, 483-84 (2000). Under this standard, "where a district court has rejected the constitutional claims on the merits, the showing required to [obtain a certificate of appealability] is straightforward: The petitioner must demonstrate that reasonable jurists would find the district

court's assessment of the constitutional claims debatable or wrong." *Miller-El v. Cockrell*, 537 U.S. 322, 338 (2003) (*quoting Slack*, 529 U.S. at 484).

Because neither the Fifth Circuit nor the Supreme Court has addressed the particular issue raised by the Petitioner, the Court finds that the Petitioner has made a substantial showing of the denial of a constitutional right. Therefore, a certificate of appealability shall be issued.

## V. CONCLUSION

For the foregoing reasons, the Petitioner has not established a claim of ineffective assistance of counsel. Accordingly, it is hereby **ORDERED** that the Petitioner's motion is **DENIED**. However, the Court shall issue a certificate of appealability to allow the Petitioner to appeal if he so chooses. Finally, it is **ORDERED** that a clerk's judgment shall issue immediately, terminating the present cause of action.

SIGNED and ENTERED on this 23rd day of January 2020.

ALIA MOSES
United States District Judge