United States District Court
Western District of Texas
Del Rio Division

| | |
|---|---|
| United States of America,<br>  Plaintiff,<br><br>v.<br><br>CRISTOBAL VELASQUEZ,<br>  Defendant. | No. DR11-CR-1781-AM-3 |

**Government's Response to Defendant's Sentence-Reduction Motion**

Defendant, Cristobal Velasquez, has filed a motion asking this Court to reduce his sentence of imprisonment under 18 U.S.C. § 3582(c)(1)(A) and order his immediate release, relying in part on the threat posed by the COVID-19 pandemic. The United States respectfully opposes the motion. This Court should deny the motion without prejudice because Defendant has not met his burden of establishing that a sentence reduction is warranted under the statute.

For three independent reasons, this Court should deny Defendant's motion. First, Defendant has failed to show the sort of extraordinary and compelling reasons that would warrant a reduction. Second, Defendant has failed to show he is not a danger to any other person or the community. Third, Defendant has failed to show that the statutory sentencing factors outlined in 18 U.S.C. § 3553(a) would support a reduced prison term.

## Background

### A. Defendant's Offense, Criminal History, and Sentence

On July 1, 2013, Defendant was found guilty of counts one, three, and four of the indictment that charged him with; Conspiracy to Conduct the Affairs of an Enterprise Through A Pattern of Racketeering and Conspiracy to Commit Murder in Aid of Racketeering by a jury. (RPSR ¶ 1, ECF No 1116.) This Court sentenced him to imprisonment for life. Defendant has served 133 months of that sentence. He now moves under 18 U.S.C. § 3582(c)(1)(A) for a sentence reduction resulting in his immediate release from the custody of the Bureau of Prisons (BOP), relying on the threat posed by the COVID-19 pandemic.

On September 29, 2011, Cristobal Velasquez was arrested as a result of an Indictment he was named that was returned as the result of a joint investigation by the Federal Bureau of Investigations targeting the criminal activities of the Texas Syndicate (TS) prison gang through a pattern of racketeering. RPSR ¶ 33-34. FBI investigation revealed that during the course of the conspiracy that Velasquez was a member and that co-conspirators committed the murders of Rogelio Mata, Jose Guadalupe De La Garza, and Jesse James Polanco, and conspired to murder Ramon Rodriguez. *Id.*

TS, which requires lifetime loyalty, further requires members continue participation in the enterprise's criminal activities while in prison and upon their release from prison. RPSR ¶ 36. On December 23, 2005, Velasquez along with others forcefully entered the home of Jose Guadalupe De La Garza and assaulted Domingo Guadalupe Guajardo for the purpose of intimidation of his father (Jose Guadalupe De La Garza). RPSR ¶ 72. An intercepted a phone call between Velasquez and a co-defendant, Velasquez assaulted an individual over a money issue. Id. In the same conversation, Velasquez agreed to accompany Co-Defendant to assault an individual over money owed to Co-Defendant.

On December 24, 2005, Cristobal Velasquez, among other TS members, reached out to a Texas Mexican Mafia (MM) member to inquire if De La Garza was a member of the MM because the TS was going to take action against him. RPSR ¶ 42. On December 25, 2005, Jose Guadalupe De La Garza, Jr., was shot to death at his residence in Uvalde. RPSR ¶ 43. Cristobal Velasquez was convicted of Aggravated Assault Causing Serious Bodily Injury on April 7, 2007 out of the States of Texas as a result of his participation in the murder of Jose Guadalupe De La Garza. RPSR ¶ 43.

During the course of the investigation, it was discovered that Velasquez participated in a pattern of racketeering that included Robbery and Aggravated Robbery, Conspiracy to Commit Murder and Murder in Aid of Racketeering of Jose Guadalupe De La Garza, Conspiracy to Distribute and Distribution of Controlled Substances, and Interference with Interstate or Foreign Commerce Through Extortion. RPSR ¶ 73.

**U.S. Response to Sentence-Reduction Motion**                                                                                                        2

Defendant underwent a jury trial which began on June 24, 2013 and concluded on July 1, 2013, where he was found guilty of counts one, three, and five of the indictment. (RPSR ¶ 2.)

In assessing Defendant's guideline sentencing range, he received enhancements for being the organizer/leader of extensive criminal activity. RPSR ¶ 66, 73, and 79. Additionally, Defendant received enhancements for taking the property of a financial institution or post and for the offense involving threat of death, bodily injury, or kidnapping. RPSR ¶ 81 & 100.

Defendant was scored at an offense level of 22 for Racketeering Act One: Robbery and Aggravated Robbery. RPSR ¶ 85. For Racketeering Act Two: Murder, Conspiracy to Commit Murder and Solicitation of Murder (Counts Three and Four) Murder of Jose Guadalupe De La Garza, Defendant was scored at a total offense level of 43. RPSR ¶ 91.

For Racketeering Act Three: Conspiracy to Distribute and Distribution of Controlled Substances, Defendant was scored at a total offense level of 32. RPSR ¶ 98.

For Racketeering Act Four: Interference with Interstate or Foreign Commerce Through Extortion, Defendant was scored at a total offense level of 20. RPSR ¶ 104.

Defendant's criminal history category was scored at a level VI. Defendant's criminal history includes a conviction for Possession of Controlled Substance To Wit: Marijuana More Than 4 Ounces Less Than 5 Pounds in 1995 for which he was sentenced to a term of five years' probation which was subsequently revoked and received one year imprisonment. RPSR ¶ 114. Defendant was convicted in 2002 of Driving While Intoxicated where he received one year probation that was subsequently revoked and he was imprisoned for 180 days. RPSR ¶ 116. In 2003, Defendant was convicted of Escape and assessed one year of probation which was revoked the same day as his previous DWI offense. RPSR ¶ 118. Also in 2003, Defendant was convicted of Evading Arrest and assessed one year of probation which was revoked the same day as his previous DWI and Escape offenses. RPSR ¶ 119. Defendant convicted of Aggravated Assault Causing Serious Bodily Injury in 2005 that was addressed earlier and involved actions that are part of the instant offense, he was sentenced to a five year term of imprisonment as a result. RPSR ¶ 120.

Based on Defendant's total offense level of 43 and a criminal history category of VI the guideline imprisonment range is life for Counts One and Four, and 120 months for Count Three. RPSR ¶ 164.

After considering the sentencing factors in 18 U.S.C. § 3553(a), this Court assessed a maximum prison term for all three counts Defendant was convicted of. (Judgment 2, ECF No. 1133.)

### B.     Defendant's Current Term of Imprisonment

Defendant has now served 133 months of his current prison term. *See* Fed. Bureau of Prisons, find an inmate, https://www.bop.gov/inmateloc/ (last visited November 6, 2022).

Defendant is currently housed at McCreary USP. *See id.* At the time of filing, BOP reported no current positive tests for staff of inmates. *See* Fed. Bureau of Prisons, *COVID-19 Cases*, COVID-19 Coronavirus (February 24, 2022), https://www.bop.gov/coronavirus/. Two inmates there have died with COVID-19, and 268 inmates have recovered. *Id.*

### C.     BOP's Response to COVID-19

In response to the COVID-19 pandemic, BOP has modified its operations plan to protect the health of inmates at BOP facilities. *See* Fed. Bureau of Prisons, BOP Modified Operations (Nov. 25, 2020), at https://www.bop.gov/coronavirus/covid19_status.jsp. Under this plan, BOP is limiting inmate movement to maximize social distancing; screening inmates involved in certain essential group activities; isolating and testing symptomatic inmates potentially exposed to the virus; and quarantining asymptomatic inmates potentially exposed. BOP is also testing new inmates and limiting movement between facilities (with exceptions for needed medical treatment, legal proceedings, and reducing overcrowding). BOP has suspended official staff travel and training (except for relocation travel and training for new staff) and has limited contractors to those providing essential services. Screening for staff and contractors entering BOP facilities includes temperature checks and self-reporting.

As vaccines have become available, BOP has begun administering them to staff and inmates. *See* Fed. Bureau of Prisons, *COVID-19 Vaccine Implementation*, COVID-19 Coronavirus, https://www.bop.gov/coronavirus/. (last visited November 7, 2022). So far, BOP has administered 376,145 doses. *Id.* Although BOP has prioritized vaccinating correctional staff to guard against virus transmission into and out of prisons, the vaccine is also becoming available to inmates. *See* Fed Bureau of Prisons, COVID-19 Vaccine Guidance 5 (Jan. 4, 2021), https://www.bop.gov/resources/pdfs/2021_covid19_vaccine.pdf. Inmates are assigned priority based on factors such as job assignment, age, and medical condition. *Id.* at 5-7. McCreary USP in particular, BOP has fully vaccinated 186 staff members and 1497 inmates. Fed. Bureau of Prisons, *COVID-19 Vaccine Implementation*, COVID-19 Coronavirus, https://www.bop.gov/coronavirus/. (last visited November 7, 2022).

BOP also continues to designate prisoners who pose the least threat to the community to serve their terms of imprisonment in home confinement. Home confinement is not a sentence reduction; instead, BOP designates an inmate's residence as the place he or she will serve a term of imprisonment. *See* 18 U.S.C. § 3624(c)(2); 34 U.S.C. § 60541. Under the Coronavirus Aid, Relief, and Economic Security Act (CARES Act), BOP may now "lengthen the maximum amount of time for which the Director is authorized to place a prisoner in home confinement." CARES Act, Pub. L. No. 116-136, § 12003, 134 Stat. 281, 516 (2020). The Attorney General has directed that BOP prioritize and maximize transfers to home confinement of inmates vulnerable

to COVID-19 in appropriate circumstances.[1] BOP is devoting all available resources to carrying out that directive. As of this filing, BOP has transferred 49,377 inmates (including inmates who have since completed service of their sentence) to home confinement. See Fed. Bureau of Prisons, *COVID-19 Home Confinement Information*, COVID-19 Coronavirus, https://www.bop.gov/coronavirus/ (last visited November 7, 2022).

### D.    Administrative Requests and Consideration

On August 24, 2022, Defendant's request for administrative relief was denied by the Warden of McCreary USP.  *See* Def. Exhibit 1, ECF 1419. The Warden of McCreary USP denied Defendant's request with the justification that Defendant is a high risk of recidivism and has a history of violence.  *Id.*

### E.    Defendant's Current Motion

On October 3, 2022, Defendant filed a motion with this Court seeking a sentence reduction under § 3582(c)(1)(A). (ECF No. 1419.) Defendant argues that his life sentence produces unwarranted sentencing disparity, the BOP staff as McCreary USP unreasonably exposed him to COVID-19, the life sentence that he received in unconstitutional, and that he has been rehabilitated and would not be a danger to the community.  *Id.*

### Argument

As the movant, Defendant bears the burden to establish that he should receive a sentence reduction. *See United States v. Jones*, 836 F.3d 896, 899 (8th Cir. 2016); *United States v. Green*,

---

[1] *See* Memorandum from William P. Barr, Att'y Gen., to Michael Carvajal, Dir., Fed. Bureau of Prisons (Mar. 26, 2020), https://www.justice.gov/file/1262731/download; Memorandum from William P. Barr, Att'y Gen., to Michael Carvajal, Dir., Fed. Bureau of Prisons (Apr. 3, 2020), https://www.justice.gov/file/1266661/download. The March 26 memorandum directs BOP to consider the totality of the circumstances, including the following non-exhaustive list of factors: the age and vulnerability of the defendant to COVID-19; the security level of the defendant's facility; the defendant's conduct in prison; BOP's assessment of the defendant's recidivism risk; whether the defendant has a verifiable re-entry plan that prevents recidivism, maximizes public safety, and would result in a lower risk of contracting COVID-19; and the defendant's crime of conviction. BOP will not designate a defendant to home confinement if doing so would likely increase the risk of contracting COVID-19.

764 F.3d 1352, 1356 (11th Cir. 2014). He has not done so. Although Defendant has exhausted administrative remedies, Defendant has failed to show the sort of extraordinary and compelling reasons that would warrant a reduction. Defendant has also failed to show he is not a danger to any other person or the community or that the statutory sentencing factors outlined in 18 U.S.C. § 3553(a) would support a reduced prison term.

I.     **Defendant has not identified extraordinary and compelling reasons for a sentence reduction.**

A court can grant a sentence reduction under § 3582(c)(1)(A) only if "extraordinary and compelling reasons" justify the reduction. The Fifth Circuit has explained that the policy statement in section 1B1.13 of the Sentencing Guidelines, although not dispositive, "informs [a court's] analysis as to what reasons may be sufficiently 'extraordinary and compelling' to merit compassionate release." *United States v. Thompson*, 984 F.3d 431, 433 (5th Cir. 2021). Defendant has not identified any reason that the commentary to section 1B1.13 recognizes as extraordinary and compelling.[2]

A.     **Defendant has not identified any medical condition that would qualify as an extraordinary and compelling reason for a sentence reduction.**

Defendant has not identified any medical condition that he currently suffers from throughout the entirety of his motion that would heighten his risk of serious illness or death if he were to contract COVID-19. The medical records that were provided for this Defendant also do not show that he suffers from any recognized pre-existing condition that would heighten his rick of COVID-19. "Fear of COVID-19 doesn't automatically entitle a prisoner to release." *Thompson*, 984 F.3d at 435; *accord United States v. Raia*, 954 F.3d 594, 597 (3d Cir. 2020).

---

[2] A subsequent panel of the Fifth Circuit held that "neither the policy statement nor the commentary to it binds a district court addressing a prisoner's own motion" for a sentence reduction. *United States v. Shkambi*, No. 20-40543, 2021 WL 1291609, at *4 (5th Cir. Apr. 7, 2021). Any argument that *Shkambi* precludes consideration of the policy statement would be inaccurate. The prior panel opinion in *Thompson*, which recognizes that the policy statement informs courts' analyses of sentence-reduction motions, governs. *See United States v. Smith*, 354 F.3d 390, 399 (5th Cir. 2003) (explaining that prior panel decisions control). The government maintains that the commentary is authoritative and binding.

**U.S. Response to Sentence-Reduction Motion**                                                                 7

Rather, the policy statement's commentary focuses on circumstances in which a medical condition is sufficiently serious to warrant a sentence reduction. *Thompson*, 984 F.3d at 433 (quoting USSG § 1B1.13, cmt. n.1(A)). These conditions include a "serious physical or medical condition . . . that substantially diminishes the ability of the defendant to provide self-care within the environment of a correctional facility and from which he or she is not expected to recover." USSG § 1B1.13, cmt. n.1(A). Courts have, "in some exceptional cases," reduced sentences "where the defendant has demonstrated an increased risk of serious illness if he or she were to contract COVID." *Thompson*, 984 F.3d at 434.

Defendant's lack of any medical condition that would increase his risk if he were to contract COVID-19 makes his argument non-compelling. Furthermore, Defendant's argument that McCreary USP has failed to adhere to their own protocols in regards to COVID-19 allowing for the virus to become widespread would be more compelling if the facility did not currently have zero COVID-19 positive inmates or staff. McCreary USP's current lack of COVID-19 positive cases on top of the 268 recovered inmates, which includes Defendant, establishes that the facility has a handle on the situation and are able to mitigate potential future outbreaks.

### 1.     **Defendant has been vaccinated against COVID-19.**

Defendant cannot show that he still faces a risk from COVID-19, even in combination with other conditions, because he has already been vaccinated against COVID-19. *See United States v. Beltran*, No. 6:16cr4, 2021 WL 398491, at *3-4 (S.D. Tex. Feb. 4, 2021); *United States v. Isidaehomen*, No. 3:16cr240, 2021 WL 243458, at *3 (N.D. Tex. Jan. 25, 2021). On April 5, 2021, Defendant received the second of two doses of an approved vaccine for COVID-19. *See* Exhibit 1 at 21, (Medical Records 2020-2021). All COVID-19 vaccines currently available in the United States have been shown to be highly effective at preventing COVID-19. Ctrs. for Disease Control, Benefits of Getting Vaccinated (Aug. 16, 2021), at https://www.cdc.gov/coronavirus/2019-ncov/vaccines/vaccine-benefits.html.

**II.  Defendant has not shown that he is not a danger to the safety of any other person or the community.**

The policy statement that informs courts' analysis of sentence-reduction motions directs courts to consider whether the defendant is "a danger to the safety of any other person or to the community, as provided in 18 U.S.C. § 3142(g)." USSG § 1B1.13(2). Section 3142(g) directs a court to consider factors such as the nature and circumstances of the defendant's offense and the defendant's history and characteristics. 18 U.S.C. § 3142(g).

Defendant has not shown he would not pose a danger if released. As outlined earlier not only was Defendant an affiliate of a street gang but also a lengthy criminal history which includes the instant offense that was extremely violent in nature. As recently as June of 2022, Defendant was considered a high risk of recidivism. Exhibit 2 (PP44). The Warden of Defendant's current facility denied him administrative remedies based upon his history of violence and high risk or recidivism. *See* Defendant's Exhibit 1. While there is no evidence to counter Defendant's claim that he has been a model inmate during his incarceration this does not rise to the level necessary for the relief sought.

**III.  Defendant has not shown that the sentencing factors in 18 U.S.C. § 3553(a) support a reduced prison term.**

This Court must also consider the sentencing factors in 18 U.S.C. § 3553(a). *See* 18 U.S.C. § 3582(c)(1)(A); *United States v. Chambliss*, 948 F.3d 691, 694 (5th Cir. 2020). At Defendant's sentencing, this Court determined that those factors supported his current sentence of life imprisonment. (Judgment 2.) Those factors continue to support that sentence rather than the 133-month sentence Defendant seeks.

The facts that supported Defendant's racketeering conviction are not only dangerous to the community as whole but also violent in nature where Defendant was part of a conspiracy that resulted in the murder of Jose Guadalupe De La Garza. RPSR ¶ 43.

The 133 months that defendant has served has not change the seriousness of Defendant's offense. The reduction Defendant seeks would ignore the sentencing guidelines and result in a sentence dramatically less than the life sentence those guidelines recommended. (RPSR ¶ 162.)

By ignoring the guidelines, a reduced sentence would disregard the need to avoid unwarranted sentence disparities among similarly situated defendants. See *Hughes v. United* States, 138 S. Ct. 1765, 1774 (2018) ("A principal purpose of the Sentencing Guidelines is to promote uniformity in sentencing imposed by different federal courts for similar criminal conduct.

No sentence reduction is necessary to provide Defendant with needed medical care. BOP is providing treatment for Defendant's medical conditions. Defendant's recovery from COVID-19 rebuts any suggestion that BOP is unprepared to successfully address his medical needs during the pandemic. See Exhibit 3 at 5, (Medical Records 2021-2022). Defendant's recovery, coupled with his subsequent vaccination shows the steps the BOP is taking measures to ensure the health and safety of Defendant and his fellow inmates. In the alternative Defendant has not provided any release plan that would show that he would be able to provide superior health care for his self, outside of the McCreary USP Facility.

In sum, Defendant has failed to show that the sentencing factors in § 3553(a) support the reduced sentence he seeks.

**IV.    Defendant's Sentence did not produce an unwarranted sentence disparity.**

Defendant's argument that his sentence produced an unwarranted sentence disparity due to receiving a greater sentence than six of his co-defendant's does not rise to the level to show unwarranted sentence disparity. The District Court is required to avoid only unwarranted disparities between similarly situated defendants nationwide, and it does not require the district court to avoid sentencing disparities between co-defendants who might not be similarly situated. *United States v. Candia*, 454 F.3d 468, 476 (5th Cir.2006). A discretionary sentence imposed within a properly calculated guidelines range is presumptively reasonable." *United States v. Campos-Maldonado*, 531 F.3d 337, 338 (5th Cir. 2008). That presumption may be rebutted "only upon a showing that the sentence does not account for a factor that should receive significant weight, it gives significant weight to an irrelevant or improper factor, or it represents a clear error of judgment in balancing sentencing factors." *United States v. Cooks*, 589 F.3d 173, 186 (5th Cir. 2009).

Defendant was properly sentenced within his guideline range as his total offense level of 43 and criminal history category of VI gives a guideline range of life imprisonment. Defendant submitted no objections to the PSR prior to sentencing to the offense level, criminal history category or the guideline range. Defendant argues that he received a greater sentence than six of his co-Defendants; however, Defendant conveniently omits that two other co-Defendants also received life sentences. Defendant provides no justification that would warrant a below guideline sentence. Defendant's sentence did not produce an unwarranted sentence disparity.

**V.    Defendant's life sentence was not unconstitutional and was not greater than necessary to comply with 18 U.S.C. 3553.**

      a.    **Defendant was convicted of a conspiracy offense**.

Defendant's arguments that he did not personally "pull the trigger" killing Guadalupe De La Garza are not relevant as Defendant was convicted of Conspiracy to Conduct the Affairs of an Enterprise Through a Pattern of Racketeering Activity. To prove a RICO conspiracy, the government must prove only that defendants conspired to violate 18 U.S.C. § 1962(c). See *United States v. Nieto*, 721 F.3d 357, 368 (5th Cir. 2013). Section 1962(c) states that "[i]t shall be unlawful for any person ... associated with any enterprise engaged in, or the activities of which affect, interstate or foreign commerce, to conduct or participate, directly or indirectly, in the conduct of such enterprise's affairs through a pattern of racketeering activity ...." A "pattern of racketeering activity" is at least two acts of racketeering activity within ten years of each other. 18 U.S.C. § 1961(5). "Racketeering activity" includes state felony offenses involving murder, robbery, extortion, and several other serious offenses and serious federal offenses including extortion and narcotics violations. 18 U.S.C. § 1961(1).

The government need not prove that Defendant "pulled the trigger." Furthermore, Defendant admits in his own motion that the District Court was fully aware that this was the case prior to his sentencing as he states that "the District Court made it clear that the Defendant DID NOT take anyone's life." District Court, after presiding over his jury trial was fully aware of the facts and circumstances against the Defendant and properly sentenced him within the guideline range.

    **b.**  **Defendant is not being unfairly prejudiced for exercising his right to a jury trial.**

Defendant's claim that his sentence violated 3553(a) and that he is being unfairly punished as a result of electing to go to jury trial is patently false. Defendant's total offense level of 43 was scored without consideration of whether he went to jury trial or not. RPSR ¶ 86. An offense level of 43 guideline range irrespective to going to jury trial or criminal history category is life imprisonment. Acceptance of responsibility credit is available under USSG §3E1.1

however such credit is not a matter of right. Defendant's sentence did not violate 3553(a), nor was it an unconstitutional punishment for exercising his right to a jury trial.

**VI.     If this Court reduces Defendant's prison term to time served, it should impose a quarantine period before release.**

If this Court disagrees and grants a sentence reduction that results in Defendant's early release, the government requests that the Court's order accommodate the need to quarantine Defendant for a period of at least 14 days to protect public health. To ensure that pre-release quarantine occurs, this Court should advise the parties of its decision while retaining jurisdiction over the motion for 14 days. BOP will then place Defendant in quarantine. If Defendant has not displayed symptoms or tested positive for COVID-19 for a period of 14 days, this Court's sentence-reduction order will then issue. If Defendant instead tests positive during the 14-day period, the government will notify the Court and seek an extension of any release date until Defendant has tested negative and displayed no symptoms for at 14 days.

## Conclusion

For all these reasons, this Court should deny Defendant's motion. Should the Court instead grant the motion, this Court should ensure that its order allows for the 14-day quarantine period described above.

Respectfully submitted,

Ashley C. Hoff
United States Attorney

By:   */s/ Larry W. Fadler*
      Larry W. Fadler
      Assistant United States Attorney
      Texas State Bar No. 24080125
      111 E. Broadway, Ste. 300
      Del Rio, Texas 78840
      phone: 830-703-2025
      fax: 830-703-2030
      Larry.Fadler@usdoj.gov

## Certificate of Service

   I certify that on November 14, 2022, I electronically filed this document with the Clerk of Court using the CM/ECF system.

☒  I also certify that I have mailed this document by United States Postal Service to the following non-CM/ECF participant(s):

Cristobal Velasquez
Inmate #83734-280
USP McCreary
P.O. Box 3000
Pine Knot, KY 42635

                                   */s/ Larry W. Fadler*
                                   Larry W. Fadler
                                   Assistant United States Attorney